## NEW ORLEANS DEBENTURE REDEMPTION COMPANY *v.* LOUISIANA.

### ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 129. Argued December 13, 14, 1900. — Decided February 25, 1901.

For the purpose of procuring a decree enjoining a corporation from acting as such on the ground of the nullity of its organization, it is not necessary that the individual corporators or officers of the company be made defendants, and process be served upon them as such; but the State by which the corporate authority was granted is the proper party to bring such an action through its proper officer, and it is well brought when brought against the corporation alone.

The State has the right to determine, through its courts, whether the conditions upon which a charter was granted to a corporation have been complied with.

This is a writ of error to the Supreme Court of the State of Louisiana, brought for the purpose of reviewing a judgment of that court affirming a judgment of the Civil District Court for the parish of Orleans, decreeing the charter of the corporation plaintiff in error, under color of which it claimed corporate

existence, to be null, void and of no effect. The suit was in the nature of a *quo warranto*. The attorney general of Louisiana, pursuant to statute, filed a petition in the trial court against the New Orleans Debenture Redemption Company of Louisiana, Limited, as sole defendant, and in that petition alleged that the defendant was not organized for any purpose for which the law authorized the formation of corporations in the State of Louisiana; that it was a debenture company formed for the sole purpose of selling or borrowing money upon its own obligations or debentures, to be paid for in monthly instalments, the company binding itself to pay the holders of debentures a profit of fifty per cent upon the amount invested. A description of the manner in which the business was to be conducted was given in the petition, and it was alleged that the whole system amounted to a mere gambling venture, demoralizing as such, and was unlawful. It is also alleged that the company in its modes of organization had not complied with the requirements prescribed for corporations of any of the classes authorized by law, and that the act (No. 36 of the Laws of 1888), under which it claimed to have been incorporated did not authorize the business which the company was doing. It was also alleged that the company and its officers, agents, managers, directors and stockholders were unlawfully exercising a corporate franchise, and were acting as a corporation in the State without having been legally incorporated, and in violation of law, and that the public interest and common justice required that the company be enjoined from declaring forfeited or lapsed the rights of any debenture holder who did not continue paying his monthly instalments during the pendency of the suit, and the prayer was that the affairs of the company be liquidated according to law under the direction of the court for the common benefit of all creditors and other persons interested according to their respective rights. The attorney general further prayed that if it should be held that the organization of the company was authorized by law, that then the charter be forfeited on account of the subsequent violation of law by the company in not insisting upon cash in payment for its shares of stock. A preliminary injunction was asked and granted, enjoining the

defendant from forfeiting or declaring lapsed the rights of any debenture holder during the pendency of the suit. This preliminary injunction was, upon an order to show cause, subsequently dissolved.

Process was served upon the president of the company in accordance with its charter. The defendant appeared and filed " peremptory exceptions to the petition, founded on law," which were overruled by the court. The defendant thereupon answered denying the material allegations in the complaint, and alleging that it was a duly and legally constituted private corporation, organized in conformity with the laws of the State, and expressly authorized by act No. 36 of the Laws of the year 1888, for the pursuit of the private enterprise and purposes set forth in its charter, and that stock had been issued to the extent of $50,000 and paid for to it, and that in doing business it had made many legal contracts which were outstanding, and that its debenture holders wished the company to keep on doing business, and it denied any gambling or wagering feature in connection with its contracts.

By supplemental answer it alleged that the purpose of the suit was to deprive the defendant, a duly and legally organized corporation under the laws of the State, of the legal right to engage in or pursue its business in any manner, and that the suit as instituted and prosecuted had for its object one which was in violation of the constitution of the State of Louisiana and of the Constitution and laws of the United States, in that it deprived the defendant of its property without due process of law, and denied to it the equal protection of the laws of the State of Louisiana and of the United States, and that it violated the laws of the United States in that the purpose of the suit was to deprive the defendant of its lawful right to pursue a lawful business, and was an unlawful discrimination against the defendant and a denial to it of the equal protection of the laws in the pursuit of its business.

The parties went to trial and evidence was given in support of the petition as to the character of the business, and also that the stock which had been issued by the defendant to shareholders had not in fact been paid for in cash as required by the

statute. The charter was put in evidence, from which, together with testimony taken in the case, it appeared that in all probability the company would be unable to perform its contracts with those who remained debenture holders until the maturity of their debentures, without the benefit which the company was to receive from lapses and forfeitures on the part of other debenture holders, resulting in a forfeiture to the company of all prior payments made by such holders. Ability to pay was even then claimed to be a matter of great doubt. It was stated by the trial court that with fair management and in the five years of its existence the company had more liabilities than assets. Much evidence was given on the trial of the case for the purpose of showing the general character of the business transacted by the company, and that it was, as alleged in the petition, of a gambling nature, and hence against the public policy of the State, and illegal.

There was no contradictory evidence on the trial regarding the facts as to the manner and plan of conducting the business of the defendant. Whether that business as thus conducted by it as a corporation and under its charter was or was not illegal, became a simple question of law. The trial judge held in favor of the State, deciding that the business done by the defendant was an unlawful business, not permitted to be pursued by any corporation, and that defendant was illegally doing business as a corporation, and decreed that the pretended charter under color of which the defendant claimed corporate existence was null and of no effect. A decree was thereupon entered adjudging that the president, secretary and general manager, as also the agents, directors, stockholders and members of the so-called corporation, were and had ever been without legal authority to act in a corporate capacity in the name of the defendant or under color of its pretended charter. It was also decreed that the injunction theretofore issued prohibiting and restraining the company, its officers, directors, agents and representatives, from removing the assets and funds of the company from the State or beyond the jurisdiction of the court, and from receiving any money or instalments from its debenture holders, and from paying out any money on surrenders or withdrawals, or in redemp-

tion of debentures, and from making loans on and from forfeit-
ing any of said debentures, or the rights of any of the holders
thereof, should be and was thereby confirmed and made abso-
lute, and the company and its officers, representatives and
members were perpetually enjoined and restrained from acting
in a corporate capacity.

A motion for a new trial was made and the constitutional ob-
jections again advanced, but the motion was denied.

After the entry of the final decree and the denial of the mo-
tion for a new trial, one August M. Benedict, a resident of the
parish of Orleans, presented his petition to the trial court, in
which he alleged that he had been appointed by the Governor
of the State the liquidator of the defendant, after the Governor
had been officially informed of the judgment rendered by the
court, and he asked to be recognized as such liquidator. The
trial court upon the presentation of the petition, with the an-
nexed commission of the Governor, made an order recognizing
Benedict as liquidator upon his taking oath and furnishing bond
in the sum of $10,000 ; the court further ordered that the officers
of the defendant transfer and turn over to the liquidator all
the assets, books and other property of whatever nature or kind
belonging to the defendant corporation. The liquidator duly
filed his bond, which was approved, and letters were granted
him by the judge of the trial court. Thereupon the defendant
corporation prayed for a suspensive and devolutive appeal to
the Supreme Court, which was granted. Upon the same day
a petition under the Louisiana practice was duly presented by
the individual stockholders and the board of directors of the
company to the court for leave to intervene in the suit, and in
the petition they alleged the giving of judgment in the case
against the company, which was the sole defendant therein, and
that none of the individual incorporators or other persons in-
terested were ever in any manner made parties to the suit, and
that the sole issue in the suit was in regard to the legality of
the business done by the company and the legality and validity
of the charter adopted and executed by the corporators, and
they represented that the right to be a corporation or the right
to legal existence as such was not a franchise of the corpora-

tion itself, but belonged to the corporators solely and exclusively. The petitioners further represented that they and each of them felt aggrieved by the judgment and by the injunction which had been issued and by the order for the appointment of a liquidator, and the order for the transfer of the property to his possession, all of which they alleged had been highly prejudicial to their legal rights, and they therefore asked to intervene in the cause for the purpose of taking and prosecuting an appeal, devolutive and suspensive, from the final judgment, and from all orders, decrees or proceedings had in the cause, including the order and proceedings under the writ of injunction therein ordered or issued, and including all orders, decrees and proceedings made or had therein for the appointment of a receiver or liquidator for said company, to the end that on said appeal they might be enabled to be heard and to obtain a reversal of all such proceedings.

Service of the petition was made on the attorney general, who accepted the same, waived citation, and acquiesced in the order granting the petitioners leave as asked for. Thereupon the directors and stockholders duly appealed to the Supreme Court from the final judgment and also from the various orders in regard to the liquidator. All of these appeals were heard in the Supreme Court and the decree of the court below was affirmed, but the separate appeal taken by the shareholders from the order recognizing Benedict as liquidator under the Governor's appointment was sustained, reserving to the State of Louisiana and all other parties in interest the question whether the appointment of a liquidator lies with the Governor, or of a receiver with the court, or with the parties in interest; such question to be thereafter determined by the court below as an open question. The company and the stockholders sued out writs of error to bring up the final decree of the state court for review.

*Mr. J. F. Pierson* for plaintiff in error.

*Mr. Frank E. Rainold* for defendant in error. *Mr. Walter Guion* and *Mr. Milton J. Cunningham* were on his brief.

MR. JUSTICE PECKHAM, after stating the foregoing facts, delivered the opinion of the court.

This suit was brought against the defendant corporation alone, to obtain, among other things, a decree enjoining the company and its officers from acting as a corporation on the ground that its alleged charter was a nullity. It was also brought to forfeit the charter in case it should be held that it had been legally organized, and such forfeiture was prayed on the ground that the company had violated the law by not receiving cash on payment of its shares.

It is now claimed that the company defendant could not properly have been made a sole defendant in an action to declare null its charter to be a corporation, and that therefore a decree in such suit declaring the company not to be a corporation (while making no decree upon the question of a violation of the charter by not taking payment for its stock in cash) condemns the corporators and takes away their property without a hearing from them and is not due process of law, they claiming that the franchise to be a corporation was their property exclusively and did not belong to the corporation as such.

It is also asserted that the State was not rightfully or properly a plaintiff in the suit, and that the institution of the suit in the name of the State was without authority of law and was therefore null and void, and did not constitute due process of law. What is meant by this latter claim is stated by the plaintiff in error as follows:

"We do not wish to be understood as dissenting from the doctrine of the plenary power of the State over the subject-matter of creating or authorizing such corporations, and we concede that her power to grant or withhold charters, as well as to grant or withhold authority to others, to constitute such corporations is unlimited. What we here insist is, that where the State has acted through her legislature and authorized the organization of the corporation, and such corporation has been constituted under her authority, that, in common with other persons, it cannot, after its creation, be denied the common right to pursue any lawful business or enterprise not inconsist-

ent with the objects and purposes of its creation; and that is precisely what the State is attempting by this suit to do in relation to the company, plaintiff in error, in this cause."

The first inquiry which presents itself is as to whether it was proper and legal to make the company alone a defendant, and as to the sufficiency of the means by which it was brought into court in an action where the relief sought was to declare the pretended charter of the company a nullity from the beginning, and where an injunction was sought to prevent the further action of the defendant corporation.

The company claimed as a fact to be organized under the act No. 36 of the Laws of Louisiana of 1888. The first and third sections of the act read as follows:

"Sec. 1. That it shall be lawful for any number of persons, not less than three, upon complying with the provisions of the laws of this State governing corporations in general, to form themselves into and constitute a corporation for the purpose of carrying on any lawful business or enterprise, not otherwise specially provided for, and not inconsistent with the constitution and laws of this State, . . . provided, no such corporation shall engage in stock jobbing of any kind."

"Sec. 3. That no stockholder of such corporation shall ever be held liable or responsible for the contracts or defaults of such corporations in any further sum than the unpaid balance due to the company on the shares owned by him."

In the answer of the company it is alleged that it was organized by the authority of this statute and that it duly filed its articles of association, stating therein at large the character of its business. It was provided in that charter that all legal process should be served upon the president of the company. The evidence showed that the company in fact did business under its charter and amendments for several years as a corporation, and claimed to be legally organized as such. It also appeared from the evidence that its stock was subscribed for by various individuals, and was issued to such subscribers or their assigns. It also issued its debentures and did business in accordance with the charter, and, as claimed, under and by the authority of the act of the legislature above mentioned. It made contracts and

it elected officers who thereafter acted as such and assumed to represent the company as a corporation doing business under the laws of the State. It was thus a *de facto* corporation, and those who contracted with it as such could not set up as a defence, when sued by it upon those contracts, that it was not a corporation or that its organization was a nullity. None but the State could call its existence in question. *Chubb* v. *Upton,* 95 U. S. 665; *Baltimore & Potomac Railroad Company* v. *Fifth Baptist Church,* 137 U. S. 568, 571. The Supreme Court of Louisiana, in this case, holds that by the laws of that State the defendant as a *de facto* corporation was properly brought into court by the service of process on its acting president. The State can therefore treat this *de facto* corporation as such, for the purpose of calling it into court and asking for a decree enjoining it from acting as a corporation, on the ground of the nullity of the organization; in other words, on the ground that it has no right to be a corporation, and that it is not a corporation *de jure.* For that purpose it is not necessary that the individuals who were corporators or officers of the company be made defendants and service of process be made upon them. The company itself may be brought into court by service upon its officer appointed pursuant to the charter under which it assumed to act, and in which it is provided that the president shall be served with process against the corporation.

Section 2593, Revised Statutes of Louisiana, provides:

" An action by petition may be brought before the proper district court or parish court by the district attorney or district attorney *pro tempore,* and for the parish of Orleans by the attorney general, or any other person interested, in the name of the State upon his own information, or upon the information of any private· party, against the party or parties offending in the following cases:

" First, when any person shall usurp, intrude into or unlawfully hold or exercise any public office or franchise within this State; or . . . Third, when any association or number of persons shall act within this State as a corporation without being duly incorporated."

" Sec. 2595. Service shall be made in such cases . . . the same as in other civil suits. . . ."

" Sec. 2602. When defendant, whether a person or corporation against whom such action shall have been brought, shall be adjudged guilty of usurping or intruding into or unlawfully holding or exercising any office, franchise or privilege, judgment shall be rendered that such defendant be excluded from such office, franchise or privilege, and also that the plaintiff recover costs against such defendant and such damages as are proven to have been sustained."

The state court has held that under these provisions, in such a case as this, the service of process upon the defendant company is sufficient to bring that company into court as a *de facto* corporation, even though not legally organized. If the company actually appear pursuant to such service, it surely must be enough so far as the corporation is concerned.

Pursuant to the service of process upon its president the company appeared in court, put in pleadings, set up as a defence that it was a legal and valid corporation under the act already cited, and claimed judgment in its favor. All this gave jurisdiction to the court to proceed with the case and try the issues, whether the defendant were or were not a valid corporation. But it is said that in such suit even that question cannot be decided, and that the presence of the individual corporators is indispensable because, as is stated, the franchise, to be a corporation, belongs to them and not to the corporation itself, and the case of *Memphis & Little Rock Railroad Company* v. *Railroad. Commissioners*, 112 U. S. 609, 619, is cited as authority for the purpose of showing that such franchise cannot be taken away without making the corporators parties.

In a certain sense the franchise to be a corporation does belong to the corporators in so far as that it does not pass by a mortgage by the company of its charter and franchises, and a sale under the foreclosure of the mortgage does not confer on the purchaser the right to be a corporation. This was held in above case. The right to be a corporation was conferred upon certain individuals, and the court held could not by the language used pass to purchasers on a foreclosure, the franchise not in

fact having been mortgaged, and the law not providing for such a mortgage. But a proceeding by the State against a *de facto* corporation to forbid its acting any longer as such on the ground that no legal right exists for it to be a corporation, we have no doubt is well brought against the company alone, treating it as such *de facto* corporation, and serving process upon its officers in accordance with the charter or law under which it assumes to be acting as such corporation. And as we remark, in another connection below, the shareholders or corporators by their action in making themselves parties to the suit, appealing from the decree and arguing their objections before the Supreme Court, have cured any possible defect which might otherwise have existed, founded upon an alleged defect of parties.

The injunction which was issued as part of the judgment was simply a means of carrying out what the court decreed, and whether an injunction prior thereto and preliminary in its nature had been granted *ex parte* or not was immaterial. The final injunction was part of the relief sought by the action, and when the court decided such action in favor of the plaintiff the injunction was to follow as matter of course. We are of opinion that for the purpose of obtaining a decree declaring the charter void and restraining the officers from acting as a corporation, the State through its attorney general was a proper party to bring the action, and for the reasons stated it was well brought against the corporation alone and the final injunction was properly issued.

Nor do the facts in this case furnish any foundation for the claim on the part of the plaintiffs in error that the State after having granted the right to be a corporation could not, after the corporation was created, deny to it the common right to pursue any lawful business or enterprise not inconsistent with the object and purposes of its creation. The claim rests upon the proposition that the State cannot deny to the company the common right to pursue any *lawful* business or enterprise. If the business or enterprise be not lawful, the whole argument fails. If not created for a lawful purpose the company was not created at all. It is not a question of the right to do certain business after it was authorized by the State to organize as such

corporation. Its legal creation depended upon the lawful character of the work it was organized to do. Whether the business be lawful is, in a case like this, a question of local law, and a decision by the state court upon that question is not reviewable here. The right to be a corporation was given by the State upon the terms that the business transacted should be lawful, and it certainly must rest with the State to determine whether. the business thus transacted by a corporation is or is not lawful. Whether such business could be done by individuals without the intervention of a corporation is not to the point. The State having the right to say upon what terms and upon what conditions it will grant the right of incorporation, it must have the right to determine through its courts whether those conditions have been complied with. It granted the right by the act of 1888 to transact any lawful business, as a corporation, upon filing articles, etc. It rests with its own courts to say whether the business transacted by such assumed corporation, by virtue of that act, is or is not lawful. Having decided that it was unlawful, the court had the right, under the state law, to declare the charter null.

Then as to the rights of the individual corporators. Has their property been in any way taken without due process of law by this decree? Clearly it has not. Nor have they been denied the equal protection of the laws. As already stated, the decree adjudges the charter, under color of which the defendant company claimed corporate existence, to be null and void, and it enjoins the officers and stockholders from acting as a corporation, in the terms already set forth. This simply holds the property until it can be properly disposed of according to law.

The original decree was entered after a trial upon the merits, and the record shows that the officers and many of the stockholders were present at the trial, and were witnesses and examined by the counsel for the company, and that in truth they made the whole defence. There was no dispute in regard to the facts, and the whole question was resolved into one of law, whether the business which was confessedly conducted by the corporation was or was not a lawful one under the laws of

Louisiana. The court refused to hear evidence that the defendant's officers acted in good faith, believing they were acting lawfully. That also was a question of local law, whether such facts constituted any defence, and the decision of the court on that subject is not reviewable here. As a result of all the evidence, the trial court held the business transacted by the company was unlawful for a corporation under the laws of Louisiana, and decreed accordingly. The shareholders then, pursuant to the law of Louisiana, petitioned the court to permit them to intervene in the case and to appeal from the decree, because they were interested therein; and leave being given, they appealed to and were heard in the Supreme Court, and that court, while affirming the final decree, at the same time reversed the order appointing a liquidator, and left the whole question open in regard to such appointment. The corporators have not in any manner been impeded or embarrassed in the presentation of their defence by not being formal parties to the record at the trial in the court of first instance. Many were present, as a matter of fact, and the defence which they interpose is one of law upon undisputed facts. There has been no taking of any property belonging to shareholders, and whatever may be done hereafter, whether by liquidator or receiver, can only be done upon notice to them, as parties to the action and after full hearing of their claims.

It is certain, therefore, that their rights have not been improperly interfered with or their property taken under or pursuant to the decree of the trial court. We are of opinion that the judgment of the Supreme Court of Louisiana must be

*Affirmed.*