The State of Kansas, *ex rel. C. C. Coleman, as Attorney-general,* v. The Inner Belt Railway Company *et al.*

No. 14,469.   (87 Pac. 696.)

SYLLABUS BY THE COURT.

1. Corporations—*Ouster Proceeding—Parties.* "For the purpose of procuring a decree enjoining a corporation from acting as such on the ground of the nullity of its organization it is not necessary that the individual corporators or officers of the company be made defendants and process be served upon them as such; but the state by which the corporate authority was granted is the proper party to bring such an action, through its proper officer, and it is well brought when brought against the corporation alone." (*New Orleans Debenture &c. Co. v. Louisiana,* 180 U. S. 320, 21 Sup. Ct. 378, 45 L. Ed. 550.)

2. Supreme Court — *Jurisdiction in Ouster Proceeding — Re-*

*straining Order.* In such an action by the state the supreme court, upon decreeing the incorporation null and void and ousting the corporation from the exercise of corporate power, may make such order restraining the officers, directors, stockholders and others assuming to act by virtue of their official relation to the corporation or by the authority or power thereof as may be necessary to make the decree of ouster effective.

3. ———— *Injunction—Original Jurisdiction.* In such a case the supreme court has no jurisdiction to grant an injunction against another corporation or individual to protect the rights of a third person or corporation.

Original proceedings in *quo warranto.* Opinion filed October 6, 1906. Judgment for plaintiff.

*C. C. Coleman,* attorney-general, and *Angevine & Cubbison,* for The State.

*McFadden & Morris, Johnson & Lucas,* and *Waggener, Doster & Orr,* for defendants.

The opinion of the court was delivered by

SMITH, J.: A careful review of the evidence in this case leads this court to make the following conclusions:

(1) That in its inception the incorporation of the Inner Belt Railway Company was not effected by the incorporators in good faith, for the purpose of building and operating, or of aiding in building and operating, a service railroad; that the principal motive in obtaining the franchise was so to simulate a railway corporation as to deceive the public and the officers and courts of the state, and thereby to procure the exercise of the power of eminent domain to the advantage of private interests, and in fraud of the rights of individual property holders.

(2) That the Inner Belt Railway Company has had no capital stock subscribed in good faith, and since its incorporation has failed to comply with every requirement of section 1293 of the General Statutes of 1901; that it has in fact no capital, no stockholders, no gen-

eral office or general officers; that it has permitted others to use its name and franchise in procuring the condemnation of private property for private and not public use, and, after the condemnation of such private property, has allowed it to be used for private and not public purposes; and that the allegations in the petition as to the fraudulent organization and incorporation of the Inner Belt Railway Company and its fraudulent conduct thereafter are true.

It is contended that the state in bringing this action against the Inner Belt Railway Company in its corporate name is estopped from denying the existence of the corporation, and that, for the same reason, the petition states no cause of action. The *de facto* existence of the corporation is expressly admitted, and a copy of its charter is attached to the petition. But it is alleged and proven that such charter was procured for an illegal and wrongful purpose, and that the corporation has not since fulfilled any purpose for which it was chartered by the state, and has abused the powers conferred in that practically its sole act as a corporation has been to lend its name to enable private persons wrongfully to devest property owners of their rights through condemnation proceedings. In support of the contention that the state is estopped to deny the corporate existence of the Inner Belt Railway Company the defendants cite, among others, the following cases: *The People v. The Rensselaer and Saratoga Railroad Company,* 15 Wend. (N. Y.) 113, 30 Am. Dec. 33; *The People, ex rel., v. City of Spring Valley,* 129 Ill. 169. We think these cases are distinguishable from the case at bar, in that fraud in procuring incorporation was not in issue, although the language of the courts in the decisions overreaching the issue seems to be in point. In *People v. Milk Exchange,* 133 N. Y. 565, 30 N. E. 850, and in the same case in 145 N. Y. 267, 39 N. E. 1062, 45 Am. St. Rep. 609, 27 L. R. A. 437, which was decided since the cases cited by de-

fendants, the New York court of appeals ·held, in an action against a corporation in its corporate name, that a complaint which stated the fact of incorporation, "but that it was fraudulently and unlawfully incorporated . . . in pursuance . . . of an unlawful . . . combination," stated a cause of action, and the corporation was ousted. There was also in the complaint a charge that the sole business of the corporation had been the unlawful control of prices for milk, it having ostensibly been incorporated for the purpose of buying and selling milk.

In the case of *New Orleans Debenture &c. Co. v. Louisiana,* 180 U. S. 320, 21 Sup. Ct. 378, 45 L. Ed. 550, which was an action in the nature of *quo warranto,* brought by the attorney-general of Louisiana in the name of the state against the debenture company to oust it from acting as a corporation on the ground of. the nullity of its organization, it was held:

"For the purpose of procuring a decree enjoining a corporation from acting as such on the ground of the nullity of its organization it is not necessary that the individual corporators or officers of the company be made defendants and process be served upon them as such; but the state by which the corporate authority was granted is the proper party to bring such an action through its proper officer, and it is well brought when brought against the corporation alone." (Syllabus.)

In the opinion written by Mr. Justice Peckham in the foregoing case the court said:

"The state can therefore treat this *de facto* corporation as such, for the purpose of calling it into court and asking for a decree enjoining it from acting as a corporation, on the ground of the nullity of the organization; in other words, on the ground that it has no right to be a corporation, and that it is not a corporation *de jure.* For that purpose it is not necessary that the individuals who were corporators or officers of the company be made defendants and service of process be made upon them." (Page 328.)

This decision is based upon the following provision

of the Louisiana statute, following the provision authorizing the attorney-general to bring the action in the name of the state:

"First, when any person shall usurp, intrude into or unlawfully hold or exercise any public office or franchise within this state; or . . . third, when any association or number of persons shall act within this state as a corporation without being duly incorporated." (R. S. La. § 2593.)

Our statute is not radically dissimilar. In specifying the grounds for the action it reads:

"Third, when any association or number of persons shall act within this state as a corporation, without being legally incorporated.

"Fourth, when any corporation do or admit acts which amount to a surrender or a forfeiture of their rights and privileges as a corporation, or when any corporation abuses its power or exercises powers not conferred by law." (Gen. Stat. 1901, § 5149.)

It will be observed that the third subdivision of the Louisiana statute and the third subdivision of our statute are essentially the same, with only a slight change of wording.

We are content to follow the logic of the Debenture and the Milk Exchange cases, *supra,* rather than the refined technicality of the opposing theory. It seems too much to say that, because an association of persons has procured a charter of incorporation for an ostensibly lawful purpose, but really for an unlawful purpose, and has thus become a corporation *de facto,* the state, in an action to deprive such association of its wrongfully acquired power, by calling it into court by its corporate name thereby conclusively admits its legal corporate existence; in other words, that the mere summoning of a corporation into court to answer the charge that it was illegally incorporated effectually estops the state from having the charge tried and determined. However cunningly devised may be any

27—74 KAN.

superstructure which rests upon fraud as its foundation, it can be demolished by the law.

As to the question whether the state is the proper party plaintiff to maintain this action, it is sufficient to say that section 5150 of the General Statutes of 1901 expressly authorizes it, and the former decisions of this court have recognized the procedure.

The petitioner also prayed that the Stewart-Peck Sand Company be enjoined from using the right of way which had been condemned by the Inner Belt Railway Company or using the track constructed by it. This court has no original jurisdiction in injunction, except so far as is necessary to protect and enforce its jurisdiction and decrees, and no such prohibition can be granted in this proceeding in favor of the petitioner and against the sand company.

It is decreed and adjudged that the incorporation of the Inner Belt Railway Company is null and void for fraud practiced by the incorporators in procuring such incorporation; that its incorporation was illegal; that the corporation is ousted and debarred from exercising any corporate powers; that the officers, directors, stockholders and agents of the corporation, and all other persons acting under the authority thereof, are enjoined and restrained from exercising any power or transacting any business as or for such corporation, or under any supposed power or authority therefrom.

The costs of this action are taxed against the Inner Belt Railway Company.

All the Justices concurring.