WILLIAM GARDNER *et al.* v. THE STATE OF KANSAS, *ex rel. Charles W. Burch, as County Attorney, etc.*

No. 15,671.   (95 Pac. 588.)

SYLLABUS BY THE COURT.

1. QUO WARRANTO—*Validity of Corporate Organization—Parties.* The state may bring an action of *quo warranto* to test the validity of a corporate organization either against the persons who officially undertake to exercise its powers and franchises or against the organization itself by the name it assumes; and in either case a valid and binding judgment of nullity may be rendered.

2. SCHOOL DISTRICTS—*Disorganization and Consolidation—Majority Vote Required.* According to section 1 of chapter 305 of the Laws of 1901 (Gen. Stat. 1901, § 6151), providing for the voluntary disorganization and consolidation of adjacent school districts, a majority of the voters in a district must

vote for the proposition to disorganize and consolidate or the proposition is lost. A majority of those who attend the meeting is not sufficient, unless that also be a majority of the voters in the district.

3. ——— *Same.* The statute referred to contemplates that all districts proposing to disorganize and consolidate must vote upon the same proposition, which must carry in all or fail.

4. CONSTITUTIONAL LAW—*Special Act—Creative, Not Curative.* Chapter 244 of the Laws of 1907, purporting to legalize and validate the steps taken in the matter of the disorganization and consolidation of certain school districts, is not a curative or confirmatory act. It is creative in its nature, and attempts to originate a union district from separate districts which it attempts to disorganize.

5. ——— *General Law Applicable — Special Act Invalid.* The statute last referred to is a special act relating to the voluntary disorganization and consolidation of school districts. Under the power conferred upon it by section 17 of article 2 of the constitution this court decides that a general law can be made applicable to that subject, and, therefore, that the special act is void.

Error from Saline district court; ROLLIN R. REES, judge. Opinion filed April 11, 1908. Affirmed.

*David Ritchie,* and *George Abel,* for plaintiffs in error.

*C. W. Burch,* county attorney, for The State; *Z. C. Millikin,* and *H. C. Tobey,* of counsel.

The opinion of the court was delivered by

BURCH, J.: In the year 1901 the legislature enacted a law providing for the voluntary disorganization and consolidation of adjacent school districts. A portion of the first section reads as follows:

"Whenever the inhabitants of two or more adjacent school districts of the state of Kansas desire to unite for the purpose of forming a single or union school district and conducting therein a graded school, the clerks of the several districts shall, upon a written application of five voters of their respective districts, or by order of the several school-district boards, call

a meeting of the voters of such districts at their respective schoolhouses, by posting up printed notices thereof in like manner as provided for calling school-district meetings, and if a majority of the voters in each of two or more adjacent districts shall vote to unite for the purpose herein stated, the clerks' of such districts shall thereupon, in writing, notify the county superintendent of such action; provided, that the vote in any district shall be made conditional upon its carrying in certain other named districts proposing to unite. Upon such notice, it shall be the duty of the county superintendent, and he is hereby authorized, at his discretion, to declare the districts so voting disorganized, and to designate a time and place for a meeting of the voters of said district so voting, for the purpose of electing a board of directors, consisting of a director, clerk, and treasurer, notice of which meeting shall be given by printed notices, posted in five public places in the districts uniting." (Laws 1901, ch. 305, § 1; Gen. Stat. 1901, § 6151.)

If the territory of a union district lie in more than one county the county superintendents of the various counties act together.

In January, 1906, the question of disorganization and the formation of a union district was agitated in school districts numbered 8, 11, 81 and 87 in Saline county and joint district No. 7 of Saline and Ottawa counties. Petitions duly signed by the requisite number of voters were presented to the clerks of the districts named, each requesting the board of directors to call a meeting to vote upon the proposition of consolidation. None of the boards of directors acted, but in each district the clerk called a meeting. In district No. 8 the petition asked for an election to vote upon the proposition to consolidate with districts No. 81, No. 87, and No. 7. The clerk's notice of election called for an election to vote upon the proposition to unite with districts No. 11, No. 81, No. 87, and No. 7, or any of them. At the election only two forms of ballots were used: one for and one against consolidation with districts No. 11, No. 81, No. 87 and No. 7. The prop-

osition to consolidate the five districts carried. In districts No. 11, No. 81, No. 87 and No. 7 the petition and the notice called for an election to vote upon the proposition of consolidation with district No. 8. In each of those districts but two forms of ballot were used at the election: one for and one against consolidation with district No. 8. The proposition carried in district No. 81, lost in district No. 11, and lost in district No. 87. In district No. 7 there were fifty-four electors. Of this number thirty-eight participated in the election. Twenty-seven votes were cast for and eleven votes against the proposition to consolidate with district No. 8.

The results of the various elections having been reported, the county superintendent of Saline county declared districts No. 8 and No. 81 to be disorganized, and joined with the county superintendent of Ottawa county in a similar declaration respecting joint district No. 7. The two officials further assumed to say that by the authority in them vested they had formed a consolidated, or union, district of the territory comprising former districts No. 8 and No. 81 in Saline county and joint district No. 7 of Saline and Ottawa counties, to be known as "union district No. 1," and a time and place was designated for a meeting of the voters to choose officers of such union district. Afterward an election was held, at which William Gardner was declared elected director, Thomas Irwin was declared elected treasurer, and Howard Burke was declared elected clerk. Upon the attempt of the gentlemen named to assume the functions of the board of directors of a union school district the state, upon the relation of the county attorney of Saline county, initiated this litigation by bringing an action of *quo warranto* against them to oust them from the exercise of the powers they claimed. The ground of the action was that the attempt to disorganize districts No. 8, No. 81 and No. 7 and to organize them into a union district was illegal and wholly void. A demurrer to the peti-

tion, on the ground of a defect of parties defendant in that union district No. 1 was not made a party, was overruled. The case was tried upon its merits, the district court made findings of fact in detail, of which the foregoing contains a summary, and made conclusions of law as follow:

" (1) That the proposition to disorganize joint school district No. 7 of Saline and Ottawa counties and to consolidate with school district No. 8, Saline county, did not receive the vote of the majority of voters in said district and was lost.

" (2) That the method of voting was such that no one was given an opportunity of voting for the formation of the district that was to be formed.

" (3) That union district No. 1, declared to have been organized by these proceedings, is an illegal organization, and the defendants have no warrant or authority in law to perform the duties of members of the school board in such illegal school district.

" (4) That original school districts numbered 7, 8 and 81 still exist and remain unaltered."

Before judgment was rendered upon the findings of fact and conclusions of law the legislature of 1907 passed an act as follows:

"AN ACT legalizing and validating the acts and steps taken in disorganizing school districts No. 8 and No. 81, in Saline county, Kansas, and joint school district No. 7 of Saline and Ottawa counties, Kansas, and organizing said school districts into union school district No. 1 of Saline and Ottawa counties, Kansas, and legalizing the election of school officers therein and the acts of such officers.

*"Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. That all of the petitions and notices given and posted for the election held in school districts No. 8 and No. 81 of Saline county, Kansas, and joint school district No. 7 of Saline and Ottawa counties, Kansas, in the month of February, A. D. 1906, relative to the disorganization of each of said school districts and organizing each of said districts into union school district No. 1 of Saline and Ottawa counties, Kansas, and the election thereafter held in said districts for the purposes aforesaid, be and the same

are hereby legalized and validated, the same as though said notices and the petitions therefor and all other steps taken in pursuance thereof had been made, had and taken in strict conformity to the provisions contained in section 6151 of the General Statutes of Kansas of 1901.

"SEC. 2. That all acts and matters done and made of record by the county superintendents of Saline and Ottawa counties, Kansas, relative to the disorganization of said school districts No. 8 and No. 81 of Saline county, Kansas, and joint school district No. 7 of Saline and Ottawa counties, Kansas, and the organization of said districts into union school district No. 1 of Saline and Ottawa counties, Kansas, be and the same are hereby legalized and made valid, the same as if said matters and acts had been done, performed and entered of record in strict conformity with the laws of the state of Kansas then existing therefor.

"SEC. 3. That the election of the school officers of said union school district No. 1 of Saline and Ottawa counties, Kansas, held in said district on the 13th day of June, A. D. 1906, and all acts of said officers, are hereby legalized and made valid, the same as if said acts had been fully authorized by the laws of the state of Kansas then existing." (Laws 1907, ch. 244.)

An application to file a supplemental answer setting up this act was denied, and judgment was rendered for the state. The defendants prosecute error.

The demurrer to the petition was properly overruled. The courts have involved themselves in some confusion respecting the matter of parties to proceedings in cases of this character, although it ought to be free from difficulty. The state may proceed against parties assuming to be the officers of a corporation to oust them from the exercise of corporate power on the ground that no corporation exists. If the fact be established that no corporation exists the parties proceeded against are of course shorn of their claimed authority, and the adjudication stands that there is no corporate body of which they might be officers. This is simple and logical. It is not necessary to appear to recognize for the purpose of suit the existence of some-

thing whose non-existence is the very basis of the proceeding. The judgment is conclusive because the persons who must make the visible display of corporate life, if there be any, are prohibited from claiming any further right to do so. On the other hand there may be in full operation that which appears to be a corporation, which is fully organized, has a complete set of officers, acquires and holds property, makes contracts, brings and defends suits, exercises in fact all the powers and privileges and incurs all the liabilities of a corporation, and, indeed, which is a corporation as against all the world except the state. In such a case the state may accept the situation as it finds it, attack the apparent entity by the name it assumes to bear, bring it into court, and there strip it of all its pretensions. This is also simple and logical, and there is no need to be nonplused by any of the scholastic difficulties with which ingenuity in linguistics and metaphysics may cloud either view.

The position of this court upon the subject is settled by two decisions: *The State, ex rel., v. Comm'rs of Ford County,* 12 Kan. 441, and *The State v. Railway Co.,* 74 Kan. 413, 87 Pac. 696. In the first case the attorney-general brought an action on behalf of the state against persons assuming to act as officers of a newly organized county, praying that they might be ousted from the exercise of the functions, powers and duties of the offices they claimed and that the county organization be declared null and void. The syllabus reads:

"Where a county organization of a new county has been obtained through falsehood and fraud, by presenting to the governor a false and fraudulent memorial, and false and fraudulent census returns, the supreme court may, in an action in the nature of *quo warranto* against the persons assuming to act as officers of such organization, inquire into said falsehood and fraud, and declare the organization illegal and void."

In the second case a charter for a private corporation had been fraudulently procured and the powers.

exercisable under such a charter had been perverted and abused. The attorney-general brought an action on behalf of the state against the corporation by name to have it adjudged to be a nullity. The syllabus reads:

"For the purpose of procuring a decree enjoining a corporation from acting as such on the ground of the nullity of its organization it is not necessary that the individual corporators or officers of the company be made defendants and process be served upon them as such; but the state by which the corporate authority was granted is the proper party to bring such an action, through its proper officer, and it is well brought when brought against the corporation alone."

It is not necessary to follow the circuit taken by the opinions in the two cases, the conclusion in each one having been so clearly and definitely formulated. The result is that the state may bring an action of *quo warranto* to test the validity of a corporate organization either against the persons who officially undertake to exercise its powers and franchises or against the organization itself by the name it assumes; and in either case a valid and binding judgment of nullity may be rendered.

The findings of fact returned by the district court are not questioned.

The first conclusion of law was inevitable in view of the statute. The legislature might have provided that a majority of the votes cast at the district meeting should control, and thus have left the question of disorganization to be determined by those who should attend the meeting. But it did not do so. The language is: "if a majority of the voters . . . shall vote," etc. A majority of the voters in a district must vote for the proposition before the district can disorganize and unite with another. In district No. 7 just half the voters voted to unite with district No. 8. They could not bind their neighbors. It required a majority, and the proposition lost.

The second conclusion of law is correct, and because of the method adopted no individual in all the five

districts voted for the union district which was declared to be formed. The people in No. 8 voted to unite with No. 11, No. 81, No. 87 and No. 7, and thus to form a union district composed of five districts. The people in No. 81 voted for a small district composed of their own and No. 8. The people in all the other districts voted upon the question of consolidation with No. 8. They declined to give up their separate organizations, and the net result was that the declaration of the two county superintendents did not have a solitary vote to support it.

The statute contemplates that all the districts proposing to disorganize and to unite shall vote upon the same proposition, which must carry in all or fail. The phraseology employed is somewhat bungling, but such is the clear intent, to prevent districts from being forced into a combination which would be repudiated if it were fairly presented for acceptance or rejection. The proceedings to disorganize and consolidate school districts are purely voluntary on the part of the people of such districts. They take action and notify the county superintendent of the result. True, the effect of this action is held in abeyance until the county superintendent declares it, and he has a discretion to withhold the declaration; but when the declaration is made it is merely of the result of the vote of the people of the several districts concerned. He possesses no disorganizing and consolidating power of his own. From what has been said it is clear that the third and fourth conclusions of law follow as a matter of course from the facts found.

If the supplemental answer tendered stated no defense the refusal to allow it to be filed was not erroneous. The question presented is the constitutionality of chapter 244 of the Laws of 1907. The recent amendment to the constitution provides as follows:

"In all cases where a general law can be made applicable no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the

constitution shall be construed and determined by the courts of this state." (Art. 2, sec. 17; see Laws 1905, ch. 543.)

The power and duty of the court under this amendment were fully discussed in the case of *Anderson v. Cloud County, ante,* p. 721. The act of 1907 is clearly special, and the question is if a general law could have been made applicable. It is claimed that this is a curative act. If so, the question is if a general curative act might have been made applicable. If, however, the act is a piece of purely creative legislation, the question is if the subject of the disorganization and consolidation of adjacent school districts may properly be included within the scope of a general law.

Although curative in form, section 1 is utterly nugatory as a curative measure. The petitions in the three districts concerned made a definite request which did not include the consolidation of districts No. 8, No. 81 and No. 7 at all. They were not defective or irregular because of that fact. They simply expressed a wholly different desire, and when legalized and validated they merely become sufficient for the clerks of the several districts to call elections upon propositions which do not relate to the formation of a union district from the three districts affected. The notices did not relate to the consolidation of the three districts named. They were not defective or irregular in that they did not do so. They were just what they purported to be, and when legalized and validated they merely served as warnings to the people of elections which did not have for their object the formation of the so-called "union district No. 1." No district voted to consolidate districts No. 8, No. 81 and No. 7, but the elections were not defective or irregular on that account. To validate and legalize the election in No. 8 is to declare legal and valid the vote to form a union district composed of No. 8, No. 11, No. 81, No. 87 and No. 7; to validate and legalize the election in No. 81

is to declare legal and valid a vote to form a union district composed of No. 81 and No. 8; and to validate and legalize the election held in No. 7 is to declare legal and valid a vote refusing to disorganize or consolidate at all.

If the three districts had voted to consolidate with each other, notwithstanding the fact that the petitions and notices did not contemplate such action, the legislature might have declared the vote valid and binding. Then there would have been a creative result based upon defective preliminary proceedings to be legalized so that it might avail. But such is not the case. It is impossible for the legislature to put into the petitions a request for an election to vote upon the consolidation of districts No. 8, No. 81 and No. 7. It is impossible for it to put into the notices information which they were not intended to afford and which they did not convey. While it may override the result of an election, it cannot change the vote of a man or of a district for one proposition into a vote for another proposition, or change a vote against a given proposition into a vote for it. Therefore the result of section 1 is to legalize and validate conduct on the part of the majority of the voters in the three districts concerned which prohibited the formation of so-called "union district No. 1," and which left the corporate integrity of the separate districts unimpaired.

If section 1 had been omitted and section 2 had provided simply that the declaration of disorganization by the two county superintendents should have the same force and effect as if it had been made with jurisdiction, section 2 might perhaps be regarded as curative. But the legislature did not wish to be in the attitude of saying that acts of the county superintendents not founded upon a vote of the districts affected should be binding. It plainly intended that the scheme of the law of 1901 should be adhered to, and so by section 1 it made a futile effort to create and supply the integral,

antecedent steps of petitions, notices and votes. Only upon the consideration that the acts of the two county superintendents rested upon a foundation thus made legal did it undertake to validate their conduct. Section 2 being thus bound up with section 1, its only effect is to say that a pure fabrication is to be taken as duly and regularly declared and recorded.

From what has been said it is clear that the act comes to nothing when regarded as curative or confirmatory. It does not and cannot fill the office of remedying defects in the formation of something which the people endeavored to create and only failed in creating because of irregularities in the proceeding. If it has any force at all it is to bring into existence and stamp as theirs measures which the people never took, and, in opposition to their votes, to declare as theirs a result which the people never had in contemplation and did not bring about. If it accomplishes this it simply originates a union district from three separate districts which it disorganizes. Such being the only possible effect of the act, it requires no argument to show that a general law may be made applicable to the subject. The conclusion inevitably follows from a consideration of the nature of the subject, and the legislature has never experienced any difficulty in framing a general law to reach the desired end. Section 1 of article 7 of chapter 76 of the Laws of 1861 effectually dealt with the matter. This act was carried upon the statute-books (Comp. Laws 1862, ch. 181, § 63; Gen. Stat. 1868, ch. 92, § 63) until 1876, when the school laws were revised. It then was reënacted as section 1 of article 7 of chapter 122 of the Laws of 1876. The act of 1901, which evidently supplanted the act of 1861, although the latter was not then expressly repealed, shows what may be done by general law upon the subject.

It is clear that the attempt to create a union district by sections 1 and 2 of the act of 1907 is void, and

48—77 KAN.

section 3, being a part of the same legislative scheme, fails also.

The supplemental answer stated no defense, and the judgment of the district court is affirmed.