W. A. LONG ET AL. v. COMMISSIONERS OF BRUNSWICK COUNTY.

(Filed 30 March, 1921.)

1. **Elections— Counties— County-seats — Electors — Qualified Voters — Votes.**

An act submitting to the voters of a county the question of the change of location of the county-seat, and providing for a large debt for the county buildings to be erected in consequence, required that unless a majority of all "the qualified voters of the county" actually "voted" in favor of one of the designated places, a second election should be held for a choice between the two places receiving the highest and the next highest "votes": *Held,* the words "qualified vote or voters" are in accordance with the intent of the statute, equivalent to the words "qualified electors," and that a majority of the qualified voters at the election would be insufficient, unless also a majority of the qualified electors of the county, whether they voted or not.

2. **Same—Constitutional Law—"Faith and Credit"—Statutes.**

An act permitting a county to change its county-seat, and to incur a debt for that purpose, submitting the question to the determination of a majority of the qualified voters thereof, must be approved under the provisions of our Constitution, Art. VII, sec. 7, requiring that for a county, etc., to contract a debt, pledge its faith, or loan its credit, it shall be ascertained by a majority of the qualified voters (in the sense of electors) therein, and not merely by a majority of those voting, if a less number.

3. **Constitutional Law—Statutes—Counties—"Faith and Credit"—Electors.**

The words used in our Constitution requiring "a majority of the qualified voters of the county" to pledge its credit, except for necessary expenses, have a well known meaning in the law, and accordingly a mere majority of the votes cast at the election is insufficient if not also a majority of the qualified electors of the county, whether they voted or not.

4. **Statutes—Interpretation—Intent—Rhetoric—Verbal Inaccuracies.**

Where the plain intent and meaning of a statute appear in its language, it will not be affected by rhetorical or verbal inaccuracy.

STACY, J., took no part in the decision of this case.

APPEAL by defendants from *Daniels, J.,* at chambers in BRUNSWICK, 13 September, 1920.

The General Assembly of North Carolina, at its regular session, 1919, passed an act entitled "An act to submit to the voters of Brunswick County the question of the location of the county-seat, and to provide county buildings," same being chapter 263 of the Public-Local and Private Laws of 1919. Under this act the board of elections of Brunswick County was authorized and directed to submit to the qualified voters of the said county the question of whether the county-seat should be located at Southport, Bolivia, or Supply. It was provided in said act that in the event no one of these places received a majority of the qualified votes of Brunswick County in said election, then under this statute a second election should be held for a choice to be made between the two places receiving the highest and the next highest votes.

In the first election Bolivia received 624 votes, Supply, 562, and Southport, 406; and it appears that 474 registered voters did not vote in said election. No one place receiving a majority of the qualified vote, a second election was ordered to be held between Bolivia and Supply. In this second election Bolivia received 754, Supply 370, votes, and it appears that 1,003 registered voters cast no ballot.

The returns of said election were duly canvassed and the result declared by the board of commissioners of Brunswick County on 5 July, 1920, said board declaring and designating Bolivia the county-seat of Brunswick County.

This action of the board of commissioners of Brunswick County in declaring and designating Bolivia as the county-seat is attacked by the plaintiffs on the ground that a majority of the qualified voters resident in Brunswick County did not cast their ballots in favor of Bolivia either in the first or second election. It appears from the allegations of the complaint that 754 qualified votes were cast in the second election for Bolivia, the same being a majority of the qualified votes polled, but less than a majority of the total number of registered voters in the county.

The whole case presents the question as to whether it was necessary for Bolivia, in the second election, to receive a majority of the qualified vote as cast, or the vote of a majority of the total number of registered voters in said county, in order to be declared the county-seat.

The court then held that before Bolivia could be declared the county-seat of Brunswick it must have received the favorable vote of a majority of the qualified voters resident in said county, whether all of them actually voted or not.

The action was brought to enjoin defendants from declaring Bolivia the county-seat of Brunswick County, or to take any action whatever for the purpose of effecting a removal of the county-seat from its present

location at Southport. Upon the foregoing ruling, the court gave judgment for the plaintiffs, citizens and taxpayers of Brunswick County, enjoining the removal of the county-seat. Defendants appealed.

*John D. Bellamy and Robert Ruark for plaintiffs.*
*McLean, Varser, McLean & Stacy for defendants.*

WALKER, J., after stating the case: The only question necessary to be considered is whether a removal to Bolivia could take place, under the terms of the statute, unless a majority of all "the qualified voters of Brunswick County" had actually voted in favor of the same at the polls, or whether a majority of those who voted at the election was sufficient to authorize the removal, and the decision of· this question turns on the meaning of the word "voters" as used in the statute. If the words "qualified vote or voters" is equivalent to "qualified electors," the judgment of the court below is correct, as Bolivia did not receive a majority of the qualified electors, or of the qualified votes of the county, when the word "vote" is taken in the sense of the registered vote, or list of registered electors.

There may be, and perhaps is, apparent conflict in the authorities elsewhere, but in this State, and by this Court, the meaning of the words a "majority of the qualified voters of a county" was finally settled long ago, and that meaning must now prevail with us. In *R. R. v. Comrs.,* 72 N. C., 486, the very question we have here was presented. There the plaintiff applied for a mandamus to compel the defendant to subscribe for six hundred shares of the plaintiff's stock for the county, and to issue county bonds in payment thereof. An election was held to ascertain the will of the people, and to get their approval thereof. Here the proposal is to remove the county-seat from Southport (formerly Smithville), and for that purpose that the county shall incur a very large debt to pay the costs and expenses of the removal and the erection of new buildings, that is $60,000 or more. In *R. R. v. Comrs., supra,* the object was to buy stock of the railroad company with bonds of the county, while in this case the purpose is to remove the county-seat, and thereby to incur a debt for which the defendants are authorized to issue the bonds of the county. It will be seen, therefore, that this case and that of *R. R. v. Comrs., supra,* are alike for all practical purposes, and are governed by the same principle. It was said in *R. R. v. Comrs., supra,* by *Justice Rodman:* "Our opinion as to the meaning of sec. 7 of Art. VII of the State Constitution relieves us from the necessity of considering any of the other questions which were ably and learnedly discussed by counsel. That section is in these words: 'Sec. 7. No county, city, town, or other municipal corporation shall contract any

debt, pledge its faith, or loan its credit, nor shall any tax be levied or collected by any officer of the same, except for the necessary expenses thereof, unless by a vote of a majority of the qualified voters therein.' It is contended for the plaintiffs that these words mean a majority of the qualified voters therein who actually vote at the election upon the question. It is not the natural meaning of the words used, but requires an addition of words to qualify and limit the generality of the expression. If the words used are so ambiguous as to be unintelligible without some addition (as were the words prescribing the tenure of a judge appointed to fill a vacancy, commented on by the *Chief Justice* in the case of *Cloud v. Wilson, ante,* 155), such addition must be made as may be proper on a consideration of the context and of all other circumstances bearing on it. But to add limiting or qualifying words is not in general permissible, or, except for very strong reasons, when the words used contained an intelligible description of the object. The word 'therein' is important. It means 'in the county,' and the phrase may then be read as 'a majority of the qualified voters of the county.' " And likewise, in *Duke v. Brown,* 96 N. C., 127, *Chief Justice Smith* says that it was not intended to dispense with the approval of a majority of the qualified voters, and allow a minority, or inconsiderable fraction it might be to determine the result. Indifference, he says, is not the test, but an *"active and expressed approval* is necessary, and this is ascertained by a majority of those entitled to vote," and he further says that however numerous the contrary rulings in other States, we must adhere to our own construction of the words "qualified voters" as being necessary to protect our people. To the same effect are *Southerland v. Greensboro,* 96 N. C., 49; *McDowell v. Construction Co.,* 96 N. C., 514; *Norment v. Charlotte,* 85 N. C., 387, and *Clark v. Statesville,* 139 N. C., 490, where the words "qualified voters" have been used in different connections. It is a rule applicable to the construction of statutes, that where they make use of words which have a definite and well known sense in the law, they are to be received and expounded in the same sense in the statute. *Asbury v. Albemarle,* 162 N. C., 247, citing *Adams v. Turrentine,* 30 N. C., 149. As said by a very able and learned judge, whose opinion is entitled to the greatest weight, "The literal meaning of the clause (majority of the qualified voters) seems to me unmistakably to require a majority of the qualified voters, whether they voted or not." The Supreme Court of the United States adopted this view in *Harshman v. Bates County,* 92 U. S., 569, by a unanimous opinion written by *Justice Bradley.* It is true that Court afterwards, in *County of Cass v. Johnson,* 95 U. S., 360, overruled the former case as to this point, but only for the reason that the Court had in that case overlooked the decision of the Supreme Court of Missouri, from which both cases came, upon the question, by

which *Chief Justice Waite* said they were bound, but no indication whatever is given in the opinion by him in the later case that any of the justices concurring in the former opinion had abandoned, or even abated, his own individual view of the matter, but there is room for clear inference that there had been no such change of mind. Two of the judges dissented, *Bradley* and *Miller, Justice Bradley* writing an able opinion, if not unanswerable, and both he and *Justice Miller* expressly adhering to their first opinion, and dissenting from the last opinion upon the ground that not even the Missouri cases had given any contrary meaning to the phrase we are considering, and, therefore, the general rule of procedure did not apply, and the Court was free to express and enforce its own independent opinion, and to give effect to its own construction of the statute, and, also, upon such construction, to declare its invalidity. The case of *State ex rel. Woodson v. Brassfield et al.,* 67 Mo., 331, directly sustains our conclusion.

We do not agree that the use of the word "vote" instead of "voters" should make any difference in the result. It means substantially the same thing. The words "vote" and "voters" are inaccurately used to express what is manifestly the meaning as heretofore held by us. "Vote" is the choice expressed at the ballot box, "ballot" the means by which it is expressed, and "voter" the person who expresses it. The proper or more exact word, perhaps, would have been "electors" instead of "voters" or "vote" in the phrase "a majority of the qualified voters," or "vote." But the intent and meaning of the Legislature is just as clear with either word, and the legislative will is not to be disappointed by the lack of rhetorical or verbal accuracy, if the meaning and intention are plainly disclosed. 36 Cyc., 1114-1127. But, without the aid of any authority or decided case, we are of the opinion that it was intended by the Legislature that all of the "qualified electors" should be counted in ascertaining whether a majority of those entitled to vote, and called "qualified voters" or "qualified vote" in the act, had actually voted.

The judgment of the court directing a permanent injunction was correct.

Affirmed.

STACY, J., having been of counsel, took no part in the decision of this case.