No. 24,182.

H. D. CLAYTON, *Appellee,* v. THE CITY OF HILL CITY et al.,
*Appellants.*

SYLLABUS BY THE COURT.

CITY BONDS—*Transmission Line for Electricity—Election—Number of Votes
Required.* A provision of the statute authorizing cities, among other things,
to construct a transmission line to obtain electricity from a plant outside
its boundaries, that no bonds shall be issued under it except upon "a vote
of a majority of the qualified electors of such city," means that those voting
in favor of the bonds must form a majority of all entitled to vote at the
election, and not simply a majority of those voting thereat.

Appeal from Graham district court; CHARLES I. SPARKS, judge. Opinion
filed June 10, 1922. Affirmed.

*W. L. Sayers,* of Hill City, *J. B. Larimer,* and *W. Glenn Hamilton,* both of
Topeka, for the appellants.

*Charles L. Hunt,* and *C. J. Putt,* both of Concordia, *John Q. Sayers,* of
Hill City, for the appellee.

The opinion of the court was delivered by

· MASON, J.: A special election was held in Hill City to vote upon
a proposition to issue bonds to construct a transmission line con-
necting with an electrical power plant in Plainsville. A majority
of the votes cast favored the proposition. The plaintiff obtained a
judgment enjoining the issuance of the bonds on the ground that
authority for that purpose could be given only by the affirmative
consent of a majority of all those entitled to vote at the election,
whether they actually did so or not. The defendants appeal, the
sole controversy being as to the true interpretation in this regard of
the statute, which provides that "no bonds shall be issued except
upon a vote of a majority of the qualified electors of such city."
(Gen. Stat. 1915, § 864.)

Where a popular vote is required to authorize certain action a
majority (or other stated proportion) of those actually voting is
regarded as sufficient for the purpose, unless the statute affirma-
tively and clearly shows a different intention. But we regard the
language quoted as too explicit to admit of any other construction
than that the bonds referred to shall not be issued without the con-
sent, expressed by voting at the election, of a majority of all the

persons lawfully entitled to vote thereat. True, there are difficulties in ascertaining the exact number of qualified electors of a given city or other governmental body, but they are not insuperable. Many statutes require petitions to be signed by a certain proportion of the electors of the district, without indicating how the total number is to be arrived at, yet their administration has not proved impracticable on that account. Nearly all the many Kansas statutes regarding special elections provide in so many words that the result shall be determined by a majority (or other proportion) of the votes cast. A provision that a majority of the qualified electors shall be necessary is so unusual as clearly to indicate a purpose to apply a different rule. The use of the word "electors" rather than "voters" tends to the same conclusion. While the terms are sometimes used interchangeably, their meaning is not precisely the same, "electors" being properly applied to those entitled to vote rather than to those actually voting, while "voters" is employed in both senses. (For illustration, see *Mills v. Hallgren,* 146 Iowa, 215.)

The defendants regard *Patrick v. Johnson,* 90 Kan. 140, 133 Pac. 161, as interpreting a similar statute in accordance with their contention. The question whether a statute referred to three-fifths of those eligible to vote or to three-fifths of those who did vote was there discussed but did not require to be decided, and was not decided, because the proposition involved had not received three-fifths of either number. It was said in the syllabus and also in the opinion that the majority did not need to be determined by an examination of the registration list, but that was a different matter. This court has interpreted a provision that school districts may be consolidated if a majority of the voters of each district vote to unite, as making the consent of a majority of those qualified to vote in each district necessary to the union. (*Gardner v. The State,* 77 Kan. 742, 95 Pac. 588.)

The federal supreme court originally held a statute of Missouri, which authorized township bonds to be issued upon a vote of two-thirds of those voting at a special election, to be void because repugnant to a provision of the state constitution forbidding their issuance unless "two-thirds of the qualified voters of such . . . town, at a regular or special election to be held therein," should assent thereto. (*Harshman v. Bates County,* 92 U. S. 569.) Later this case was overruled, the court holding (two of the justices dissenting) that the constitutional requirement was satisfied by the

assent of two-thirds of those voting at the election. (*County of Cass v. Johnston*, 95 U. S. 360.) The second decision, however, was expressly based upon the ground that the court was concluded by earlier rulings of the state supreme court, to which attention had not been called at the hearing of the first case. The rule of the second case was applied in interpreting the same language found in the constitution of Mississippi, although the state supreme court had already construed it as requiring the consent of two-thirds of those entitled to vote (*Hawkins et al. v. Carroll Co.*, 50 Miss. 735), the refusal to follow that construction being justified by the fact that the rights of the holder of the bonds in controversy had accrued before the decision by the state court. (*Carroll County v. Smith*, 111 U. S. 556.) The federal rule has been followed in the interpretation of a similar provision of the constitution of another state. (*Vance et al. v. Austell et al.*, 45 Ark. 400.) The same interpretation of equivalent language was adopted in *Sanford v. Prentice and others*, 28 Wis. 358, but there the court said, "If the legislature had intended a majority of the *qualified electors* of the district, they would undoubtedly have used those words instead of the words 'legal voters,' or in some other way have made their intention plain." (p. 363.) A constitutional requirement of a vote of "two-thirds of the qualified electors of the parish" has been held not to be met by a two-thirds majority of those voting, the court saying, "If the framers of the constitution intended that meaning, they could readily have found words in which to express it, instead of declaring what they meant by saying 'two-thirds of the qualified electors of the parish or parishes affected.' " (*Hobgood v. Police Jury*, 147 La. 279, 282; see, also, 9 R. C. L. 1116, 1117, note 4.) Even the phrase "a majority of the qualified voters of the county" has been given the same effect. (*Long v. Comrs.*, 181 N. C. 146.)

Upon a hasty search we find no other Kansas statute in which the result of an election is made to turn upon the concurrence of "a majority of the qualified electors" of the public body or district affected. Of some fifty-five election statutes examined one uses the phrase "a majority of the electors" (§ 1776); another "a two-thirds vote of the legal voters" (§ 8654); another "two-thirds of the legal voters" and "a majority of the legal voters" (§ 8915). The others employ language indicating clearly that a majority (or other proportion) of those voting shall determine the result. The act here under consideration among other things authorizes the municipality

to purchase or contract for the construction of oil wells, to lease or buy natural gas and oil lands, and construct pipe lines to the city. It is natural that with respect to undertakings extending beyond a city's limits stricter methods of ascertaining in advance the wishes of its inhabitants should be employed than where the project involved is confined within its borders, and we regard the language used by the legislature in the present instance as indicating a purpose to make a more exacting requirement than in the case of ordinary bond elections.

The judgment is affirmed.

DAWSON, J.: not sitting.