# REPORTS OF CASES

DETERMINED BY

# THE SUPREME COURT

OF THE

# STATE OF NEVADA

OCTOBER TERM, 1922

[No. 2574]

THE STATE OF NEVADA, EX REL. H. A. KEARNS, PETITIONER, *v.* LENA E. STRESHLEY, COUNTY CLERK OF LANDER COUNTY, NEVADA; O. P. ADAMS, AND WM. L. WATSON, RESPONDENTS.

[209 Pac. 712]

1. PROHIBITION—IF RETURN TO ORDER TO SHOW CAUSE SETS UP ADMITTED OR UNDISPUTED FACTS, IT IS SUFFICIENT, THOUGH NOT FORMAL PLEADING.

In complying with an order to show cause, if the return sets up an admitted or undisputed fact which defeats the application for the writ of prohibition, it is sufficient, though not a formal pleading in the nature of an answer.

2. COUNTIES—PURPORTED ORDER DISTRICTING COUNTY OF NO EFFECT, WHERE RECORD DOES NOT SHOW COMPLIANCE WITH STATUTE.

A purported order of the county commissioners dividing a county into commissioner districts was of no effect, where the record did not show that the board acted on a petition signed by qualified electors, or that they constituted 20 per cent of the electors, as required by Rev. Laws, 1531.

3. COUNTIES—THAT DISTRICT ATTORNEY ADVISED THAT COUNTY COULD BE DISTRICTED HELD NOT TO ESTOP THIRD PERSONS FROM URGING THAT RECORD DID NOT SHOW COMPLIANCE WITH LAW.

Where, in application for writ of prohibition, commanding the county clerk to refrain from printing names of candidates for commissioners on the official election ballot, the fact that the district attorney presumably advised the commissioners that the county could be districted did not estop the third persons from urging on defense on the show-cause order that the commissioners' record did not show a compliance with Rev. Laws, 1531.

ON PETITION FOR REHEARING

4. APPEAL AND ERROR—ATTORNEYS MUST STATE POINTS IN ARGU-
   MENTS IN PRINTED BRIEFS.
      It is the duty of attorneys to state their points and argu-
   ments in their printed briefs.
5. PROHIBITION—FORMAL ANSWER TO APPLICATION NOT REQUIRED
   BY CODE.
      The requirement of a formal answer to an application for
   a writ of prohibition is not within contemplation of Civ. Code,
   sec. 767 (Rev. Laws, 5709), and Rev. Laws, 5699.
6. PLEADING—ANSWER SUFFICIENT, IF SETTING UP AFFIRMATIVE
   MATTER WHICH IN LAW DEFEATS THE CAUSE OF ACTION.
      It is not necessary that an answer shall formally admit
   or deny allegations of the complaint; but, if it sets up
   affirmatively matter which in law defeats the cause of action,
   it is sufficient.

ORIGINAL PROCEEDING in prohibition by the State of
Nevada, on the relation of H. A. Kearns, against Lena
E. Streshley, County Clerk of Lander County, and
others. **Writ denied, and proceeding dismissed. Peti-
tion for rehearing denied.**

*James D. Finch,* for Petitioner:

The object of the act as amended was to divide the
counties into commissioner districts in order that the
various sections might have representation, and particu-
larly that the different sections should rotate in the
election of the long-term commissioner.   Any other
construction of the act would be ridiculous.

The intention of the legislature controls the courts,
and when such intent is manifest it is to be carried out.
Maynard v. Newman, 1 Nev. 271; Thorpe v. Schooling,
7 Nev. 15; State v. Ross, 20 Nev. 61; Brown v. Davis,
1 Nev. 409; Maynard v. Johnson, 2 Nev. 25.

In interpreting doubtful statutes, the primary object
is to ascertain the intent of the legislature, which is to
be gathered, first, from the language of the statute, next
from the mischiefs intended to be suppressed, or the
benefits to be attained.   Brown v. Davis, 1 Nev. 409;
Maynard v. Johnson, 2 Nev. 25.

The meaning of the words used in a statute is dis-
closed by examining the context, and ascertaining the

reason and spirit of the law and the causes which induced it. Absurd construction should be avoided. State v. Dayton and Virginia Tollroad Co., 10 Nev. 155; Ex Parte Siebenhauer, 14 Nev. 365.

Courts may extend, modify, or restrict meaning of words used in a statute so as to meet evident policy of the act. Ex. Parte Siebenhauer, 14 .Nev. 365.

"We do not know of any express statutory provision for demurrer to return to writ of prohibition, or other mode of questioning its sufficiency; however, this is often done by motion to quash return." 111 Am. St. Rep. 975, citing People v. District Court, 23 Colo. 466, 48 Pac. 500; State v. Elkin, 130 Mo. 90, 30 S. W. 333, 31 S. W. 1037.

*Cantwell & Springmeyer,* for Respondents:

A board of county commissioners is a body of limited and statutory powers, and may exercise their powers only when and as defined and permitted by statute. When the power of a board of county commissioners to do any particular act is questioned, the record must show affirmatively all facts necessary to give authority to perform that act. Being compelled by statute to keep a record of their proceedings, the minutes of the board constitute the record of their official acts. All facts, then, upon which their authority to do a particular act rests, must affirmatively appear in their minutes, or other orders relative thereto are void.

Jurisdiction to divide a county into commissioner districts is acquired by a board of county commissioners only when a petition is before them, which is signed by 20 per cent, or more, of the qualified electors of the county; the fact that such a petition is before them, and that it contains the signatures of the necessary proportion of the qualified electors, must be shown by their minutes, and not by the mere recitals of the petition; their minutes must show it affirmatively as a fact found by them. 15 C. J. 466; State v. Ormsby Co., 6 Nev. 95; Johnson v. Eureka Co., 12 Nev. 28;

Godchaux v. Carpenter, 19 Nev. 415; State v. Kelso, 46 Nev. 128.

By the Court, COLEMAN, J.:

This is an application for a writ of prohibition, directed to the respondent, Lena E. Streshley, as county clerk of Lander County, commanding her to refrain from causing to be printed on the official election ballot of said county, to be voted at the ensuing general election, to be held November 7, 1922, the names of O. P. Adams and William L. Watson, or any other name than that of relator, as candidate for the office of long-term commissioner of said county.

The application is based upon the allegation that the board of county commissioners, pursuant to statute (Rev. Laws, 1531), at a meeting duly held on July 2, 1906, divided said county into three commissioner districts, designating them as First district, Second district, and Battle Mountain district, and directed that the long-term commissioner be elected at the election to be held November 6, 1906, from the Battle Mountain district and the short-term commissioner from the Second district; that at subsequent elections for county commissioner in said county a long-term commissioner has been elected from each of said districts alternately; that the long-term commissioner whose term expires at the end of the present year was elected from the Battle Mountain district, and that at the ensuing general election the long-term commissioner should be elected from the First district. It is further alleged that the relator is the only qualified elector of the First district, who has been nominated for long-term commissioner of said county, but that one O. P. Adams, a qualified elector of Battle Mountain district, and William L. Watson, a qualified elector of the Second district, have been nominated for the office of long-term commissioner; also that the respondent, Streshley, is threatening to have printed, and, unless the writ sought issues, will have printed, for the ensuing general election, upon the

ballot to be voted at said election, the names of said Adams and Watson as candidates for said office of long-term commissioner.

Upon the presentation of the petition an alternative writ was issued, directing respondent Streshley to omit from the ballot to be printed the names of said Adams and Watson, or show cause why they should be printed upon said ballot as candidates for long-term commissioner of Lander County. To the said writ a return has been filed, to which is attached as an exhibit a copy of the petition filed with the board of county commissioners, praying for the dividing of said county into commissioner districts, together with a certified copy of the minutes of the meeting of the board at which the purported action dividing the county into commissioner districts was taken.

1. It is the contention of relator that the action of the board of county commissioners in making the order dividing the county into commissioner districts is valid, and that no one is eligible to be elected for the long term except a qualified elector of the First district; also that the return is neither an answer to the petition nor a demurrer thereto, and hence this court must direct the issuance of the peremptory writ as prayed.

We cannot agree with this conclusion. In complying with the show-cause order, we do not think the return of the respondent needs to be a formal pleading in the nature of an answer. If it sets up an admitted or undisputed fact, which defeats the application, it is sufficient. In this instance the return contains, as stated, a certified copy of the proceedings of the board of county commissioners. It contains some other matters, among which is an allegation that the district attorney of Lander County had advised the respondent county clerk that she must cause the names of the respondents Adams and Watson to be printed upon the ballot, but this allegation can in no way affect the sufficiency of the return.

2. This brings us to a consideration of the question:

Does the record of the board of county commissioners, as duly certified, show a valid division of the county into commissioner districts? The return shows that at a meeting of the board of county commissioners, held April 3, 1905:

"The petition of citizens asking to have the county divided into commissioner districts was presented to the board and action postponed for further consideration."

It also appears from the said return that there was a meeting of the board of county commissioners on July 2, 1906, the minutes of which show the following entry:

"On motion of H. R. Lemaire, duly seconded and carried, it was ordered that Lander County be divided into three commissioner districts, to be known as the Battle Mountain commissioner district, the First commissioner district, and Second commissioner district."

Then follows a description of the territory comprising each district, and a provision that the long-term commissioner to be elected at the ensuing election be elected from the Battle Mountain commissioner district. This is all that appears from the record of the meetings in question. There was no finding that the signers of the petition were qualified electors, or that they constituted 20 per cent of such electors. So far as appears from the record, 50 per cent of the signers of the petition may have been transients.

What we said in the very recent matter of State ex rel. Fall v. Kelso, 46 Nev. 128, 208 Pac. 424, must necessarily control. In that case, following former decisions of this court, we adhered to the well-established rule that a board of county commissioners exercises limited and special powers, and that, when the power of such a board to do a certain thing is questioned, the record must show affirmatively all the facts necessary to give authority to the board to act. The statute in question in the present proceeding requires 20 per cent or more of the *qualified electors* of a county must petition the board of county commissioners to divide the

county, to give it power to take such action. In keeping with the rule recognized in the case mentioned, it must affirmatively appear from the record that the board of county commissioners found as a fact that 20 per cent of the qualified electors of Lander County signed the petition.

3. Counsel also contends that the respondents should be estopped from urging the defense interposed. The theory advanced in the opening brief to sustain this contention is rather novel. It is said that, since the district attorney in 1905 "presumably" advised the county commissioners that the county could be divided into commissioner districts, and now advises that the action taken is illegal, respondents would seem to be estopped. This is the sole theory presented to sustain the contention. True, in the reply brief our attention is directed to the case of Coleman v. People, 7 Colo. App. 243, 42 Pac. 1041, and Ashley v. Board of Supervisors, 60 Fed. 55, 8 C. C. A. 455. As to the advice of the district attorney, we may say there is nothing before us to indicate what advice the district attorney gave in 1905; but, assuming that he advised as suggested, it is very evident that the advice given recently was based entirely upon our opinion in the Fall case, supra. In any event, no advice of the district attorney can operate to estop a third party. We may say that neither of the cases mentioned is in point, since the facts in those cases were dissimilar from those in the instant case.

Finally it is said by counsel for petitioner:

"We earnestly submit that the case of State v. McCullough, 3 Nev. 202, at page 222, is absolutely decisive of this case and entitles the relator to the peremptory writ on the pleadings."

It is not pointed out wherein that case is controlling. We are not favored with counsel's theory as to its application. It pertained to a private corporation, and no point therein decided applies to the situation here presented, so far as we can see.

Other matters are discussed in the brief, but it is

unnecessary to dwell upon them. To prolong this opinion would be a work of supererogation. The writ prayed for should be denied, and the proceeding dismissed.

It is so ordered.

## ON PETITION FOR REHEARING

By the Court, COLEMAN, J.:

4. In the petition for a rehearing, counsel for petitioner takes exception to the comment made in the last paragraph of the opinion of the court in reference to the case, of State v. McCullough, 3 Nev. 202, and expresses regret that time did not permit of an oral argument. It is our observation that it is much better for attorneys to clearly and concisely express their views in their written briefs. Besides, it is the duty of attorneys to state their points and arguments in their written briefs, that opposing counsel may have an opportunity to answer.

It is now contended that the case mentioned was cited as an authority to the point that there should have been an answer to the petition in the case. We could never have presumed so, either from what was said in the brief or from its position therein. So far as appears from the order of arrangement in the brief of the points presented, that question has been fully covered, and the matter of estoppel' taken up, and two or three pages devoted to it; the brief concluding with the quotation.

5. It is now insisted that we erred in our former statement of the law as to the necessity of a formal answer to the petition, and our attention is directed to the case of Piper v. Gracey, 11 Nev. 223, to support that view. In this connection, it may be observed that the court in that case correctly stated that the proceedings in mandamus were controlled by the express provisions of the civil practice act of this state, as it pertained to pleadings in civil actions. A similar provision is incorporated in our present code. Rev.

Laws, 5699. We do not see, however, what that has to do with prohibition proceedings under our code provision relative thereto as it now stands. Section 767 of the civil code (Rev. Laws, 5709) provides that the writ of prohibition issues upon affidavit. It says nothing about its issuing upon a complaint such as is contemplated in an ordinary civil action. The next section merely provides that the party to whom the writ is directed shall "show cause" why he should not be absolutely restrained from further proceeding. It does not say that cause shall be shown by an answer, or in what manner it shall be shown.

6. It is evident that it was the intention of the legislature that the return to the writ might be informal in character. It is the substance of the return that is of consequence—not its form. But, had the code provided that cause should be shown by answer, we think the return in this case sufficient. It is not necessary that an answer, even in a civil suit, shall either formally admit or deny the allegations of a complaint. If it sets up affirmatively matter which in law defeats the cause of action pleaded in the complaint, it is good. The return in this matter does that.

Counsel renews his objections to the position taken by the court in adhering to the view expressed in State v. Kelso, 46 Nev. 128, 208 Pac. 424, in which we followed the rule enunciated in Godchaux v. Carpenter, 19 Nev. 415, 15 Pac. 140. The line of reasoning urged upon us by counsel is not without force, but it was rejected by this court in the Carpenter case, supra, which case is in line with the overwhelming weight of authority, as shown by the citations in 15 C. J. 466.

As to the question of estoppel, we are satisfied with what was said in our former opinion. *

It is ordered that the petition for rehearing be denied.

DUCKER, J.: I concur.

SANDERS, C. J., did not participate.