NORMAN E. HANSON, LINDSAY SMITH, A. F. REVERT AND MELVIN G. EADS, APPELLANTS, *v.* THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF NYE, SOLAN TERRELL, STEVEN L. BALLIET AND NICK BANOVICH, RESPONDENTS.

No. 4136

January 13, 1959

333 P.2d 994

(Petition for rehearing denied February 16, 1959.)

*Springer & McKissick,* of Reno, for Appellants.

*William P. Beko,* District Attorney, Nye County, for Respondents.

## OPINION

By the Court, McNAMEE, J.:

This is a proceeding in mandamus instituted in the lower court to compel the board of county commissioners of Nye County to comply with sec. 244.050, Nevada Revised Statutes, which requires the county commissioners to divide the county into three commissioner districts whenever 20 percent or more of the qualified electors of any county petition them to that effect.

On February 3, 1958, 600 qualified electors of Nye County petitioned their county commissioners to divide Nye County into three districts in accordance with the provisions of said statute.[1] It was stipulated that the petition is in proper form. On June 25, 1958, the board

[1]Sec. 244.050 NRS "1. Whenever 20 percent or more of the qualified electors of any county in this state shall petition the board of county commissioners of their county to that effect, the county commissioners of such county shall, on or before the 1st Monday in July preceding any general election, divide the county into 3 districts to be known as Commissioner Districts. Such division shall be made to conform to the established boundaries of election precincts or wards, and each election precinct or ward shall be wholly within one of the commissioner districts herein provided. Each commissioner district shall embrace, as near as may be, one-third of the voting population of the county, to be determined by the vote cast at the last general election, and shall consist of adjoining precincts; but in case not more than three election precincts or wards exist in the county, then each election precinct or ward shall constitute a commissioner district."

formally resolved to take no action on the petition, stating as its reason that there was no "correct, proper, or accurate method of procedure for determining" as a fact whether 20 percent of the qualified electors had signed the petition. The commencement of these proceedings is the result of such action.

From an order denying the relief sought, appellants appeal.

The lower court in so ruling held that the said statute was void for uncertainty and so incomplete it could not be executed.

The problem in this case is a result of the statutory use of the words "qualified electors" without the designating of any means by which to determine the number of qualified electors at a given time.

Three years prior to the enactment of the statute this court had pointed out the distinction between "qualified electors" and "qualified voters" in holding that a qualified voter is a qualified elector who has registered to vote, and that registration is not an electoral qualification. State ex rel. Boyle v. Board of Examiners, 21 Nev. 67, 24 P. 614, 9 L.R.A. 385.

It is respondents' contention that since it is impossible to determine accurately the number of qualified electors in a county at any specified time, they could not find as a fact that 600 qualified electors represented 20 percent of the qualified electors of the county, and that therefore they would take no action on the petition.

This statute has been in existence since 1893 and has been cited three times by this court. State ex rel. Fall v. Kelso, 46 Nev. 128, 208 P. 424; State ex rel. Kearns v. Streshley, 46 Nev. 199, 209 P. 712; McDonald v. Beemer, 67 Nev. 419, 220 P.2d 217.

In State ex rel. Fall v. Kelso, supra, the court, in holding invalid the action of the county commissioners dividing Mineral County into three election districts under said statute where the record failed to show that the board found as a fact that 20 percent of the qualified electors petitioned for such a division, said: "In the instant case it does not appear from the record of the meeting of the board that the so-called petition was con-

sidered by the board, or that it was even presented to it."

In State ex rel. Kearns v. Streshley, supra, the court said [46 Nev. 199, 204, 209 P. 712, 713] :

"What we said in the very recent matter of State ex rel. Fall v. Kelso, 46 Nev. 128, 208 Pac. 424, must necessarily control. In that case, following former decisions of this court, we adhered to the well-established rule that a board of county commissioners exercises limited and special powers, and that, when the power of such a board to do a certain thing is questioned, the record must show affirmatively all the facts necessary to give authority to the board to act. The statute in question in the present proceeding requires 20 per cent or more of the *qualified electors* of a county must petition the board of county commissioners to divide the county, to give it power to take such action. In keeping with the rule recognized in the case mentioned, it must affirmatively appear from the record that the board of county commissioners found as a fact that 20 per cent of the qualified electors of Lander County signed the petition."

The McDonald case, supra, held unconstitutional a 1933 statute regulating the manner in which Washoe County could be divided into commissioner districts, and stated that that county could be divided only under the provisions of said 1893 act (NRS 244.050).

Although the court did not deem it necessary in any of these three cases to pass on the constitutionality of the statute in question, it did in effect point out that a board of commissioners was required to follow the procedure specified therein before its action could be legal.

We feel that this statute gives the power to the county commissioners to divide the county into districts "whenever 20 per cent or more of the qualified electors" shall so petition; that it is mandatory that they exercise such power; and that in determining whether the mandatory provisions of the statute have become operative it becomes necessary for them to decide from whatever reasonable evidence exists whether the petition is signed by at least 20 percent of the qualified voters in Nye County as of February 3, 1958.

"* * * for the board to do what the statute apparently requires it to do may sometimes demand qualities of a high judicial order; still the inquiry is a preliminary one for administrative purposes only. It adjudicates no private right; establishes no precedent; settles no principle. The difference between such an exercise of decisional faculty and that involved in the common everyday affairs of the board is of degree merely and not of kind." State ex rel. Lang v. Furnish, 48 Mont. 28, 134 P. 297, 299.

The question in the Furnish case was whether the statutory language specifying a petition signed by 50 percent of qualified electors meant 50 percent of the persons residing in the territory who possess the constitutional qualifications of electors, or by 50 percent of such electors who have registered. In answering this question the court said:

"Our own conclusion is that under the Leighton Act, and under the present act, the provision in question requires the board to determine whether a petition for exclusion, at the time it was filed, contained the genuine signatures of one-half the qualified electors of the territory, regardless of registration, and that for such determination the board may resort to whatever competent evidence may be at hand, including the great register so far as it avails."

In Clayton v. Hill City, 111 Kan. 595, 207 P. 770, in commenting on this problem, the court said:

"True there are difficulties in ascertaining the exact number of qualified electors of a given city or other governmental body, but they are not insuperable. Many statutes require petitions to be signed by a certain proportion of the electors of a district without indicating how the total number is to be arrived at, yet their administration has not proven impracticable on that account."

We conclude that the statute in question is not void, that the duties it imposes upon a board of county commissioners when a petition in proper form is presented

to them must be performed, and, insofar as such duties require an administrative determination, it is incumbent on them to make such determination.

It is obvious that such a determination cannot be made with precision. This fact must have been apparent to the legislature. By its failure to provide a method or guidepost by which such a determination might be made (as has been done in other instances) the legislature, in effect, must be deemed to have authorized the county commissioners to avail themselves of any reasonable method.

The judgment and order of the district court are reversed, and the court is directed to issue a peremptory writ of mandamus requiring the respondents to make a determination whether 20 percent or more of the qualified electors in Nye County as of February 3, 1958, have signed the petition, and if so to divide the county pursuant to said statute; otherwise not.

MERRILL, C. J., and BADT, J., concur.